# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLORIA MCKINNEY, *Plaintiff*, v. BAYSHORE HEALTH CARE AT MERIDIAN, et al. *Defendants.* | Civil Action No.: 16-cv-4139 (PGS) **MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

Presently before the Court is Defendant Hackensack Meridian's motion for Summary Judgment dismissal of Plaintiff Gloria McKinney's Complaint. (ECF No. 64). In an earlier order, the Court granted in part and denied in part Defendant's Motion to Dismiss, under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28). Plaintiff's remaining claims allege: (1) race discrimination under Title VII of the Civil Rights Act of 1964; (2) age discrimination under the Age Discrimination in Employment Act (ADEA); and (3) unlawful retaliation under Title VII and the ADEA. (*Id.*). For the reasons discussed below, Defendant's motion for summary judgment will be granted.

## BACKGROUND

Plaintiff Gloria McKinney is a sixty-three year old African American, who has worked for Bayshore Health Care (hereinafter, "Bayshore") as a Nutritional Services Supervisor (hereinafter, "supervisor") since October 1999. (Defendant's Statement of Material Facts [SOMF] at ¶¶ 3, 9). Supervisors work in one of two shifts: opening and closing. (*Id.* at ¶¶ 17-18). Opening shifts begin at 5:30 or 6:30 AM and end at approximately 2:00 PM, while closing shifts begin at 11:30 AM and end at approximately 8:00 PM. (*Id.* at ¶ 18).

1

Beginning in April 2013, Bayshore's Director of Nutritional Services, Laura Perez, and Administrator, William Hamilton, required all supervisors to rotate between working the opening and closing shifts (hereinafter, "Operational Decision"). (*Id.* at ¶¶ 11-12, 36). However, prior to this decision, Plaintiff only worked the morning shift and complained to Perez about working evening shifts, since the closing supervisors do not do their jobs and she "has to pick up all the slack." (*Id.* at ¶¶ 39-40). Apparently, Perez responded, "that's your nature." That response offended Plaintiff; however, in a subsequent meeting between Plaintiff, Perez, and Hamilton, Perez apologized to Plaintiff for any comment she made that may have offended her. (*Id.* at ¶¶ 41, 44).

Nevertheless, Plaintiff later filed a complaint with Human Resources in April 2013 about Perez's "that's your nature" comment and being required to work closing shifts. (*Id.* at ¶ 45; ECF No. 64-14). Claudia Myers, a Meridian Team Member Relations Specialist, then investigated the issues raised in Plaintiff's complaint. (*Id.* at ¶ 45). After discussing the issues with Perez and Hamilton, Myers expressed to Plaintiff that Perez's comments were not meant to insult her and noted that Perez had apologized to her. In addition, Myers explained to Plaintiff that, contrary to her assertion, she was not the only "closing supervisor," and identified two other individuals who were also required to work closing shifts. (*Id.* at ¶¶ 53-55). Finally, although Plaintiff apparently took issue with the fact that another employee was not required to assume closing shifts, Myers explained that the other employee was an "Assistant Director," not a "Supervisor" and, as such, was not required to work closing shifts. (*Id.*). Plaintiff does not claim to have been disciplined or adversely affected in any way.

In July 2015, Plaintiff was summoned to a meeting with Hamilton, Perez, and Beverly Osbourne, the Director of Nursing. (*Id.* at ¶ 66). Apparently, a patient within Bayshore's Dementia Unit suffered seafood allergies and was inadvertently served clam chowder soup. (*Id.* at ¶ 62).

This was the second time that a patient was served food that he was allergic to, and Plaintiff was the on-duty supervisor for both incidents. (*Id.* at ¶¶ 63-64). The purpose of the meeting was to discuss the process of ensuring that patients were served food consistent with their dietary restrictions and to prevent future mistakes. (*Id.* at ¶ 66). However, Plaintiff denied any wrongdoing or error in her supervision of the patient's food tray; and claimed that she felt she was being "picked on" by Hamilton because she was African American. (*Id.* at ¶ 67). Plaintiff claimed that other non-African American employees made similar food tray mistakes, but were not singled out by management. (*Id.* at ¶ 68).

Plaintiff's allegation of discrimination triggered another internal investigation by Myers and Brad Viola, Bayshore Relations Manager. (*Id.* at ¶ 70). In an interview between Viola and Plaintiff, Plaintiff also claimed that other "white" supervisors were assigned fewer closing shifts than she was. (*Id.* at ¶ 77). This being said, Viola confirmed that, contrary to Plaintiff's assertion, another Caucasian employee was confronted by Perez after inadvertently serving mushroom soup to a patient with mushroom allergies. (*Id.* at ¶ 79). Similarly, Viola and Myers compared Plaintiff's work schedule with her fellow supervisors and concluded that her claims that she worked more closing shifts were unsubstantiated. (*Id.* at ¶ 80).

Since August 1, 2015, Bayshore has employed five other supervisors, all of whom have worked significantly more closing shifts than Plaintiff. (ECF Nos. 64-23 to 64-29). In addition to working fewer closing shifts than any other supervisor, Plaintiff has also earned the highest annual salary than any other supervisor. (SOMF at ¶¶ 95, 97, 99, 101, and 103).

## LEGAL STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving

3

party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor. . . that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

Although *pro se* pleadings are "liberally construed" and "held to less stringent standards

than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), "a pro se plaintiff is not exempt from his burden of providing some affirmative evidence, i.e. not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial." *Niblack v. Murray*, No. 12-6910, 2016 U.S. Dist. LEXIS 99325, at *7 (D.N.J. July 29, 2016) (citing *Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014)).

**ANALYSIS**

1. Title VII of the Civil Rights Act of 1964

Defendant seeks summary judgment dismissal of Plaintiff's race discrimination claim, since she has failed to allege an adverse employment action. In her Complaint, Plaintiff simply claims to have been discriminated on the basis of her being African American.

To assert a prima facie case of employment discrimination, Plaintiff must show: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff.*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).[1] "The Third Circuit has defined an adverse employment action as an action that alters the employee's compensation, terms, conditions, or privileges of employment." *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 312 (D.N.J. 2005) (internal quotation marks and citations omitted). However, "not everything that makes an employee

---

[1] Where a plaintiff proves a prima facie case of employment discrimination, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason." *McDonnell*, 411 U.S. at 802. Because the Court concludes that Plaintiff has failed to prove a prima facie case, there is no burden shift onto Defendant.

5

unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997).

Here, it is undisputed that Plaintiff satisfies the first two prongs. However, the record plainly fails to demonstrate the existence of an adverse employment action. While the basis of Plaintiff's claims are predicated on Bayshore's 2013 operational decision, there is nothing that demonstrates how this decision affected Plaintiff's status or, alternatively, how this decision was executed in a way that treated Plaintiff less favorably than others based on her race. *See Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999) ("The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" (citation omitted)). Here, even when viewing the record in the light most favorably to Plaintiff, there is nothing presented in the record for this Court to reasonably infer any discriminatory action. In fact, as discussed above, the record establishes that Plaintiff has worked less closing shifts and earned a higher annual salary than any other supervisor. Therefore, since Plaintiff fails to demonstrate any adverse employment action, summary judgment will be granted on Plaintiff's Title VII claims.

2. Age Discrimination in Employment Act (ADEA)

Defendant next seeks summary judgment dismissal of Plaintiff's claim that she was discriminated on the basis of age, since younger employees were hired as supervisors. Specifically, Defendant claims that Plaintiff has failed to demonstrate how Bayshore's hiring of young and white supervisors affected her employment. The Court agrees.

"The ADEA prohibits age discrimination in employment against any person over age forty." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). To sustain a claim

under ADEA, Plaintiff must demonstrate that she "(1) is over 40; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination." *Id.*

Again, it is undisputed that Plaintiff satisfies the first two prongs; however, as discussed above, Plaintiff has failed to demonstrate how she has suffered an adverse employment decision. While Plaintiff claims that Bayshore "hired younger white/Caucasian supervisors with less qualifications, and seniority," she has failed to illustrate how this decision adversely affected her. (ECF No. 64-1 at 13). Contrary to Plaintiff's assertion, the record reflects that all supervisors were required to rotate between opening and closing shifts, and Plaintiff nevertheless worked less closing shifts than any other supervisor. Simply put, the competent evidence presented fails to support Plaintiff's contention that young and white employees received preferential treatment from Bayshore, such that this Court could reasonably infer age discrimination. Therefore, the Court will grant summary judgment dismissal of Plaintiff's ADEA claim.

3. Retaliation

Finally, Defendants seek summary judgment dismissal of Plaintiff's retaliation claims. To establish a prima facie claim of unlawful retaliation under Title VII, an employee must demonstrate that (1) she engaged in an activity that Title VII protects; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between her participation in the protected activity and the adverse employment action she suffered. See *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Similarly, to establish a prima facie claim of retaliation under the ADEA, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she was subject to an adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the

7

adverse action. *See Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). Here, as discussed above, the Court concludes that Plaintiff's failure to demonstrate any adverse action is fatal to her claim. Plaintiff does not allege to have been disciplined in any form, as a result of her July 2013 complaint. Similarly, no subsequent disciplinary actions were taken against her after the 2015 food-tray incident. Simply put, the record is bereft of any adverse action taken by Bayshore such that this Court could find that Bayshore retaliated against Plaintiff for complaining about purported discriminatory conduct of Bayshore employees. Therefore, the Court grants summary judgment dismissal of Plaintiff's retaliation claims.

## ORDER

This matter having been brought before the Court on a motion for Summary Judgment brought by Defendant, Hackensack Meridian Health, Inc. (ECF No. 64); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 13th day of December, 2017,

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 64) is **GRANTED**.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.